IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN WATSON, | ) | CASE NO. 1:01CV1816 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) | |
| | ) | |
| PARMA COMMUNITY GENERAL | ) | MEMORANDUM OF OPINION |
| HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on consent of the parties. Pending is Defendant Parma Community General Hospital's ("Parma Hospital") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is opposed. For the following reasons, the motion is granted.

I.

On July 26, 2001 plaintiff, Kevin Watson ("Watson"), filed a complaint against Parma Hospital, alleging in Count One a violation of the "oppositional clause" of 42 U.S.C. § 2000e et seq. and in Count Two a violation of Ohio Rev. Code §§ 4112.01 et seq. and 4112.99. The factual allegations of plaintiff's complaint are as follows: In or about 1997 Watson was named Head of the

Radiation Safety Program at Parma Hospital. In or about January 2000 Watson learned that a co-worker was pregnant and refused to disclose to his employer the name of the pregnant employee. Watson contends that "[h]onoring the confidence of this pregnant co-worker was an act for which Watson was protected by state and federal law." When he failed to disclose the name of the individual, Parma Hospital removed Watson from his position. The action, Watson contends, was unlawful retaliation for his having engaged in protected activity. In Count Two Watson alleges that the adverse employment actions taken against him by Parma Hospital were retaliatory actions in violation of state law. Watson seeks reinstatement and compensatory and punitive damages.

Watson asserts that prior to filing suit, to wit: in October 2000, Watson filed a charge with the Equal Employment Opportunity Commission ("EEOC") asserting a violation of Title VII. On April 27, 2001 the EEOC issued a right to sue notice to Watson. At that point this suit was commenced.

Defendant responded by filing a Rule 12(b)(6) motion. Parma Hospital asserts first that plaintiff failed to allege a *prima facie* case of discrimination in that he has not alleged he engaged in conduct proscribed or protected by Title VII. Alternatively, defendant argues that plaintiff's Title VII claim is time-barred.[1] It asserts that plaintiff failed to file a claim within 300 days of the alleged unlawful conduct.

II.

In reviewing a motion to dismiss under Rule 12(b)(6), the court construes the facts in the light most favorable to the plaintiff and accepts as true all well-pled allegations in the

---

[1] Because the exhibits submitted by the parties raise issue of fact with respect to the timeliness of plaintiff's filing of an EEOC charge, the court cannot resolve the issue on a 12(b)(6) motion.

2

complaint. *Dugan v. Brooks*, 818 F.2d 513, 516 (6th Cir. 1987); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). A 12(b)(6) motion does not go to the merits or facts of the case but to the legal sufficiency of the claims. *See, e.g., Conley v. Gibson*, 355 U.S. 41 (1957); *G.M. Engineers & Assoc., Inc. v. West Bloomfield Township*, 922 F.2d 328, 330 (6th Cir. 1990).

To assess the legal sufficiency of the claim, the court looks to the allegations made in light of Federal Rule of Civil Procedure 8(a)(2). This rule requires "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *Id.* A complaint need only "afford the defendant a fair notice of what the plaintiff's claim is and the ground upon which it rests." *Conley v. Gibson*, 355 U.S. at 47. Once these basic criteria have been met, a motion for dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

In order to establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendants; (3) defendants thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

The single issue before the court at this stage is whether defendant's removal of plaintiff as Head of the Radiation Safety Program when he refused to disclose the name of a pregnant co-worker states a claim for retaliatory action in violation of Title VII or Ohio Rev. Code § 4112.[2] That is to say, is "[h]onoring the confidence of [a] pregnant co-worker . . . an act for which Watson

---

[2] A claim under Ohio Rev. Code § 4112.02(I) is analyzed under Title VII law. *See Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St. 3d 607, 609-610, 575 N.E.2d (1991), *cert. den.* 503 U.S. 906 (1992).

3

was protected by state and federal law?" The court concludes that the alleged activity is not covered by Title VII.

### III.

Title 42 U.S.C. § 2000e-3(a) states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has . . . assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.

The Act thus protects an employee who either participates in Title VII proceedings (the "participation clause") or opposes actions prohibited by Title VII (the "opposition clause"):

> The distinction between employee activities protected by the participation clause and those protected by the opposition clause is significant because federal courts have generally granted less protection for opposition than for participation in enforcement proceedings. The "exceptionally broad protection" of the participation clause extends to persons who have "participated in any manner" in Title VII proceedings. Protection is not lost if the employee is wrong on the merits of the charge nor is protection lost if the contents of the charge are malicious and defamatory as well as wrong.
>
> ****
>
> On the other hand, "'the opposition clause' . . . does not protect all 'opposition' activity." Courts are required " to balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel. . . . The requirements of the job and the tolerable limits of conduct in a particular setting must be explored." "There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered. . . ." An employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals.

*Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989)(citations

omitted). Despite the narrow construction of the manner of opposition, the employee "opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful." *Id.* at 1312-13.

Plaintiff alleges that his employer retaliated against him because he refused to disclose the name of a pregnant employee in his department. Plaintiff's conduct falls within the opposition clause. Therefore, the conduct is not accorded the breath of protection of the participation clause. Nevertheless this court recognizes the delicate balance between opposing activities one believes to be unlawful and maintaining control of a workplace with the employer.

> Allowing an employee to invoke the protection of [Title VII] for conduct aimed at achieving purely ulterior objectives, or for conduct aimed at achieving even proper objectives through the use of improper means, could have an effect directly contrary to Congress' goal, by discouraging employers from hiring persons whom the Act is designed to protect. The standard can be little more definitive than the rule of reason applied by a judge or other tribunal to given facts. The requirements of the job and the tolerable limits of conduct in a particular setting must be explored.

*Hochstadt v. Worcester Found. For Experimental Biology*, 545 F.2d 222, 231 (1st Cir. 1976).

We begin by noting what plaintiff does not allege. He does not allege that he had a reasonable belief that his co-worker would be demoted, transferred or fired if her pregnancy was known. He does not allege that his employer has a history of terminating pregnant employees. He does not allege that his employer told him it needed information about pregnant employees in order to take adverse employment action against them. In contrast to his assertion in his opposition brief, Watson does not allege that he held a good faith belief "that Parma would have acted adversely toward the pregnant female who sought Watson's confidence . . . ." Opposition brief at 3. Importantly there is a missing step in Watson's analysis - disclosure of the name of the pregnant

employee is a full step away from Watson's opposing any adverse action which might have been taken against that employee. Thus without any allegations of actions taken against pregnant employees and with no allegation of a reasonable belief that disclosure of someone's name would lead to adverse action against that person, plaintiff cannot be said to have made out a prima facie case.

Moreover, it is clear from Sixth Circuit law that this court must "balance the purpose of the Act to protect persons engaging reasonably in activities opposing . . . discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel . . . ." *Booker* at 1313, quoting *Hochstadt* at 231. Plaintiff was Head of the Radiation Safety Program at defendant hospital. He was in a position of authority where he was responsible for carrying out hospital policy. If the hospital had in place a program to protect pregnant employees who could be exposed to radiation, he was in a position where he should not expose the hospital to possible liability. "An employee is not protected by Title VII when he violates legitimate company rules, knowingly disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals." *Unt v. Aerospace Corp.*, 765 F.2d 1441, 1446 (9th Cir. 1985). Any subjective belief by plaintiff that because he had confidential information from a co-worker he was not obligated to follow legitimate company rules and could disobey orders from his superiors is unsupportable.

This court concludes as a matter of law that it was objectively unreasonable for plaintiff to take the position that he was opposing a Title VII violation in refusing to disclose the name of a pregnant co-worker. Because plaintiff did not engage in protected oppositional activity, the court concludes that he has not established a prima facie case of retaliatory discharge and thus

has not stated a cause of action..

## IV.

For the above stated reasons, defendant's Motion to Dismiss is granted.

IT IS SO ORDERED.

Dated: January 7, 2002	s:\Patricia A. Hemann
	Patricia A. Hemann
	United States Magistrate Judge

7